**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert P. Bouchard,<br><br>    Plaintiff,<br><br>vs.<br><br>Jo Anne B. Barnhart, Commissioner of Social Security,<br><br>    Defendant. | No. 05-1283-PHX-ROS<br><br>**OPINION AND ORDER** |

Plaintiff Robert P. Bouchard, by way of a Motion for Summary Judgment, seeks review of a denial of disability insurance benefits. Plaintiff argues that the Administrative Law Judge ("ALJ") erred by discounting the opinion of a treating physician, improperly interpreting certain evidence, and discounting Plaintiff's testimony. Defendant Jo Anne B. Barnhart also seeks summary judgment. Defendant asserts that the ALJ had no duty to address evidence presented and considered in a prior disability proceeding and substantial evidence supports the ALJ's ruling. For the following reasons, summary judgment is granted in favor of Defendant.

## BACKGROUND

Plaintiff filed an application for disability benefits in 1990. He was awarded a closed period of disability from November 6, 1990 through April 12, 1994. Plaintiff filed a second

application for disability on February 18, 1998. That application was denied in an Administrative Law Judge ("ALJ") decision dated May 25, 2000. Plaintiff did not appeal that decision. Plaintiff filed the current application for disability benefits on June 10, 2002. (Tr. 92) According to that application, Plaintiff became disabled on December 14, 1998 "due to a broken femur; reflex sympathetic dystrophy in the right upper extremity; hypertension; adjustment disorder and personality disorder." (Tr. 17) Later Plaintiff amended the onset date to May 26, 2000, the day after his second application was denied. The parties agree that Plaintiff was insured for disability through December 2000. Plaintiff's medical history is as follows.

## A. Hand Injuries

Plaintiff cut into live wires in 1995 and suffered electrical burns to his hands. One of Plaintiff's doctors wrote a letter in 1998 stating that Plaintiff's hand problems did not prevent him from working "a full work schedule." (Tr. 580) In 1999, Plaintiff was diagnosed as having a 12% impairment of his left hand and a 40% impairment of his right hand. (Tr. 65) But other tests also in 1999 produced no evidence of denervation and Plaintiff's complaints regarding his hands were determined to be "suggestive of embellishment." (Tr. 169) This evidence regarding Plaintiff's hands was considered by the ALJ in his May 2000 decision. In that decision the ALJ determined Plaintiff was not disabled due to his hand injuries. During the course of his current application, Plaintiff provided no medical records generated after May 2000 involving his hand injuries. The ALJ decision currently under review does not mention Plaintiff's hand injuries.

## B. Mental Health Issues

In 1995 Plaintiff was diagnosed with major clinical depression and post traumatic stress order. (Tr. 351) Plaintiff underwent subsequent psychological testing as well. (Tr. 355) In his May 2000 decision, the ALJ evaluated mental health reports and concluded that Plaintiff's symptoms did not qualify as sufficiently disabling. After that decision, two psychologists were asked to evaluate Plaintiff's mental impairments between the May 2000

ALJ decision and December 2000, the date Plaintiff was last insured (December 2000). Both of those psychologists concluded there was insufficient evidence for a "defensible decision" as to Plaintiff's mental health during the relevant period. The ALJ relied on those two opinions in his 2003 decision to conclude Plaintiff was not disabled due to any mental impairment.

## C. Femur Fracture

Plaintiff suffered a femur fracture in 1990. (Tr. 166) He suffered a second fracture in January 1998. (Tr. 167) Due to concerns over his healing, Plaintiff underwent surgery in September 1998. (Tr. 419) This evidence was considered in the May 2000 decision but the ALJ determined that Plaintiff was not disabled at that time.

Plaintiff underwent surgery again in November 2000. On January 25, 2001, Plaintiff's treating physician stated that Plaintiff would be able to perform "modified or transitional work" by February 1, 2001. The physician also stated that Plaintiff would reach "maximum medical improvement" by March 1, 2001. (Tr. 399) A report dated March 6, 2001 found Plaintiff "essentially stationary" and that his lower extremity problems resulted in an 8% impairment. (Tr. 398) Plaintiff was evaluated by a different doctor in October 2001. That doctor concluded that in light of Plaintiff's conditions, the "8% permanent impairment of his left lower extremity [was] appropriate." (Tr. 432) Plaintiff's treating physician provided another evaluation on May 19, 2003. That physician reiterated his belief that the lower extremity problems resulted in an 8% impairment. Also, the physician stated that the femur fracture was "a relatively minor component of [Plaintiff's] overall physical condition and disability." (Tr. 442)

The ALJ evaluating this evidence in 2003 determined that Plaintiff did suffer "some shortening of his leg; some discomfort as well as some decreased range of motion of his left hip and some atrophy of his distal left quadriceps." (Tr. 19) But these symptoms were not enough for the ALJ to conclude that Plaintiff was disabled.

# ANALYSIS

## A. Standard of Review

The Court reviews the denial of benefits under a deferential standard of review. A "decision to deny benefits will be disturbed only if it is not supported by substantial evidence or it is based on legal error." Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (quotations omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quotations omitted). Where the evidence presented to the ALJ "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is also "responsible for determining credibility and resolving conflicts in medical testimony." Magallanes, 881 F.2d at 750.

In this case, there was a prior finding of nondisability that Plaintiff did not appeal. "The principles of res judicata apply to administrative decisions." Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988). Thus, after the May 2000 decision finding Plaintiff not disabled, there was a "presumption of nondisability" going forward. Id. The burden was on Plaintiff after the May 2000 decision to overcome the presumption and "prove 'changed circumstances' indicating a greater disability." Id. (quoting Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985)). The ALJ in 2003, therefore, appropriately focused on evidence of changes in Plaintiff's condition between May 2000 and the date Plaintiff was last insured, December 31, 2000.[1]

---

[1] Plaintiff's attorney confirmed this application of res judicata to the current case at the hearing by the following dialogue.
> **ALJ**: And then is also my understanding that there has to be a change in circumstances to warrant me saying that there is disability from even May 26 of 2000. Is that also – am I stating that correctly?
> **Plaintiff's Attorney**: Yes.

### B. Hand and Mental Impairments

Plaintiff presented no post-May 2000 documentary evidence regarding his hand injuries or his mental impairments. In his Statement of Facts submitted with his Motion for Summary Judgment, Plaintiff cites to medical reports involving both ailments that predate the May 2000 ALJ decision. Those medical reports were relevant to the May 2000 ALJ determination, not to the ALJ decision currently at issue. Reflecting the lack of new evidence, two state agency psychologists asked to review Plaintiff's mental health records both concluded that there was insufficient evidence from May 2000 through December 2000 that Plaintiff's mental health diagnoses had changed. Finally, at the hearing before the ALJ, Plaintiff testified regarding both conditions. Plaintiff stated that he had started to experience cramps and spasms in his hands. (Tr. 41) Plaintiff also testified, however, that his doctor had observed no changes in his hands since a number of operations years before. (Tr. 45) Also, when asked if his hands "stayed pretty much the same since 1999" Plaintiff responded that "[t]hey're basically the same." (Tr. 46) The only mention of his mental health issues at the hearing was Plaintiff's testimony that his "doctor says [he's] bipolar." (Tr. 44) Evaluated as a whole, the evidence regarding Plaintiff's hand injuries and mental impairments was insufficient to support a finding of "changed circumstances." Thus, the ALJ in the current case did not err by giving res judicata effect to the May 2000 ALJ decision and concluding that Plaintiff is not disabled due to his hand injuries or mental impairments.

### C. Femur Injuries

Plaintiff did present post-May 2000 evidence to the ALJ regarding his lower extremity troubles. Plaintiff underwent surgery on November 9, 2000. Plaintiff's treating physician had him on a "no-work status" from November 9, 2000 through February 1, 2001. (Tr. 399) The treating physician released Plaintiff to "modified or transitional work" as of February 1, 2001. That work was limited to "sitting position only" for four to six hours per day. (Tr. 399) The physician observed that Plaintiff would reach "maximum medical improvement" on March 1, 2001. (Tr. 399) Plaintiff also submitted an evaluation done by Irwin Shapiro,

M.D. on October 1, 2001. In that evaluation, Dr. Shapiro concluded that plaintiff had "(1) some shortening of his left leg, (2) some discomfort as well as some decreased range of motion of his left hip and (3) some atrophy of his distal left quadriceps." (Tr. 430-432) Dr. Shapiro believed that Plaintiff's "8% permanent impairment of his left lower extremity [was] appropriate." Regarding Plaintiff's work possibilities, Dr. Shapiro provided some limitations such as no climbing but observed that Plaintiff could work in a "primarily sedentary type of occupation." (Tr. 432) Plaintiff was evaluated again in May 2003. That evaluation concluded that Plaintiff showed "good healing" from his various leg surgeries and that his leg problems were a "relatively minor component of his overall physical condition." (Tr. 442) At the hearing in 2003, Plaintiff testified regarding complications connected to his leg problems. He stated that he has a hard time climbing stairs and that his left leg "will not carry weight bearing." (Tr. 42) When asked if there were anything else, Plaintiff responded that he had gained weight but "[t]hat's pretty much all."

The ALJ evaluated this evidence and determined that Plaintiff was not disabled. The ALJ determined that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (Tr. 19) Also, the ALJ discounted Plaintiff's allegations that he was unable to work due to pain because by Plaintiff's "own accounts in the medical records, he is able to function . . . and [the pain] does not incapacitate him in any particular manner." (Tr. 20) Even if the Court accepts as true that Plaintiff was not able to work after his surgery in November 2000 until March 1, 2001, that does not meet the twelve-month minimum durational requirement. See Barnhart v. Walton, 535 U.S. 212, 217-222 (2002) (ruling Social Security Administration's interpretation of 12-month durational period valid). The Court must defer to the ALJ's decision when there is substantial evidence to support it and there was substantial evidence in the record supporting the ALJ's determination. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

### D. Conclusion

Due to administrative res judicata, there was a presumption of nondisability. Plaintiff bore the burden to present proof of changed circumstances indicating a greater disability than previously evaluated. Plaintiff did not present any evidence on certain aspects of his disability and the ALJ properly evaluated evidence regarding other aspects.

Accordingly,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 7) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. 14) is GRANTED.

DATED this 1/24/06.

Roslyn O. Silver
United States District Judge